IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DOUGLAS WAYNE SILLIVAN,<br><br>Defendant. | CR-21-06-H-BMM<br><br>ORDER ON DEFENDANT'S MOTION TO SUPPRESS (DOC. 71) |

# INTRODUCTION

Defendant Douglas Wayne Sillivan ("Sillivan") is charged by Indictment with one count of Possession of Stolen Ammunition in violation of 18 U.S.C. §§ 922(j) and 2, and one count of Prohibited Person in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1). (Doc. 1 at 2–3). The charges stem from an alleged sale of stolen gunpowder, which Sillivan allegedly picked up on behalf of his co-defendant Isaiah Morsette. (Doc. 85 at 3). Sillivan moves to suppress the statement that he made to federal law enforcement following his arrest on July 14, 2021. (Doc. 85 at 4). The Government opposes Sillivan's motion. (Doc. 85).

The Court conducted a hearing on the motions on December 6, 2021. The Government presented testimony from Special Agent Caleb Enk ("Enk") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

## BACKGROUND

Sillivan has worked for and at times, lived with, his co-defendants Catherine and Isaiah Morsette, who own a pawn shop in Helena—Modern Pawn & Consignment ("Modern Pawn"). (Doc. 85 at 3). It was unclear whether Sillivan worked at Modern Pawn or whether he just hung out there regularly. *Id.* Regardless, in February 2021, Sillivan allegedly picked up fifty pounds of stolen gunpowder from the Town Pump in Boulder, Montana, on behalf of Isaiah Morsette. *Id.*

Sillivan was charged on July 8, 2021, alongside the Morsettes and co-defendant Richard Munoz in an indictment alleging various crimes related to the sale of firearms and ammunition at the Morsettes' pawn shop. (Doc. 85 at 2). The Government charged Sillivan with two firearm violations: (I) possession of stolen ammunition and (II) possession of ammunition by a prohibited person. (Doc. 1 at 1–2).

Sillivan previously had been convicted of felony rape in Oklahoma in 1996 and felony sexual assault in Montana in 2004, for which he is still on parole. (Doc. 85 at 13–14). Sillivan was aware that his felony conviction prohibited him from

possessing a gun or ammunition, but he alleges he was unclear as to the status of gunpowder. (Doc. 72 at 6–7).

Law enforcement arrested Sillivan on July 14, 2021, at approximately 5:00 a.m. and took him to Lewis and Clark County Jail. At 3:00 p.m., ATF Agent Caleb Enk and Lewis and Clark Sheriff's Office Deputy James Ward interviewed him for 44 minutes. (Doc. 85 at 4). At the onset of the interview, Agent Enk noted that Sillivan was in custody and so Agent Enk needed to provide Sillivan with his *Miranda* rights. *Id.* Agent Enk then read Sillivan his *Miranda* rights from the Advice of Rights and Waiver form. *Id.* When asked if he understood his rights, Sillivan responded, in an unintelligible, but seemingly affirmative manner. *Id.* Agent Enk asked if that was a "yes" for the recording and Sillivan confirmed it was. *Id.*

Agent Enk then read the waiver portion of the form to Sillivan, informing him that the waiver read that Sillivan had been informed of his rights, that he was willing to answer questions without a lawyer present, and that he had not been threatened or pressured. (Sillivan Interview, 0:50-1:00). After reading the waiver, Agent Enk told Sillivan "I want to chat about what you've been charged with, why you've been charged with it, and kind of what's going on with being in federal custody and going forward from there." *Id.*, 1:07-1:16. Agent Enk asked Sillivan "is that fair?" and Sillivan responded affirmatively. *Id.*, 1:16-1:20.

Agent Enk then told Sillivan: "I'm going to go ahead and sign this form and I'll have you sign it as well and then we'll sit down and get some questions answered." *Id.*, 1:21-1:24. Sillivan proceeded to sign the waiver form. Sillivan now argues that his waiver was not voluntary, knowing, or intelligent. (Doc. 72 at 5). The government objects. (Doc. 85).

## DISCUSSION

Sillivan argues that the statement he provided to Agent Enk violated Sillivan's Fifth Amendment rights. (Doc. 72 at 1). The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Law enforcement jeopardizes the privilege against self-incrimination where it takes an individual into custody, or otherwise deprives the person of their freedom, in any significant way and subjects them to questioning. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). *Miranda*'s procedural safeguards protect people against the coercive nature of custodial interrogations. *DeWeaver v. Runnels*, 556 F.3d 995, 1000 (9th Cir. 2009).

Once properly advised of their *Miranda* rights, a suspect may waive their right to an attorney only if the waiver is voluntary, knowing, and intelligent. *Miranda*, 384 U.S. at 475. A waiver is "voluntary knowing, and intelligent" if (I) it

was the product of a free and deliberate choice rather than intimidation, coercion, or deception and (II) it was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421(1986). Courts look to the totality of the circumstances to determine whether a waiver and statement are voluntary, knowing, and intelligent. *Id.* Those circumstances include the age, mental condition, physical condition, level of education, psychiatric state, and socioeconomic status of the defendant. *See, e.g.*, *United States v. Frank*, 956 F.2d 872, 876 (9th Cir. 1991).

**I.   Sillivan freely and deliberately chose to waive his right.**

A confession is voluntary so long as no coercive police conduct occurred. *Colorado v. Connelly*, 479 U.S. 157, 157 (1986). A confession is involuntary if coerced either by physical intimidation or psychological pressure. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). The critical question in a voluntariness inquiry is whether the defendant's "will was overborne" when making the confession. *United States v. Miller*, 984 F.2d 1028, 1030 (9th Cir. 1993). The Government bears the burden of proving by a preponderance of the evidence that a defendant's statements were voluntary. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).

Sillivan argues that Agent Enk's used coercive tactics that overbore Sillivan's will by reading Sillivan his *Miranda* warnings and the waiver too quickly, and by instructing Sillivan to sign the waiver rather than asking him to sign it. (Doc. 72 at 10).

Sillivan argues that Agent Enk read Sillivan his *Miranda* warnings and the written waiver too "rapidly" for Sillivan to clearly understand their "formal and legal" language. (Doc. 72 at 9-10). Officers may issue *Miranda* warnings in any form that reasonably conveys to a suspect his rights, there is no "talismanic incantation" that satisfies *Miranda*'s strictures. *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989) (*quoting California v. Prysock*, 453 U.S. 355, 361 (1981) (per curiam)). Agent Enk read standard warnings that "touched all the bases" required by *Miranda* in a manner no more "formal and legal" than any other. *Id.* As for Agent Enk's pace in reading the rights and waiver, Sillivan gave no indication that Agent Enk was moving too quickly or that the Sillivan's ability to understand had been compromised by Agent Enk's speed. On the contrary, Sillivan verbally confirmed that he understood the rights read to him. (Doc. 85 at 4). Agent Enk read Sillivan his rights and the waiver in a clear, intelligible manner that reasonably conveyed to Sillivan his rights. No coercive police conduct occurred in Agent Enk's reading of the *Miranda* rights or the waiver.

Sillivan next argues that Agent Enk applied psychological pressure by instructing Sillivan to sign the waiver of rights rather than asking him if wanted to sign. (Doc. 72 at 10). Sillivan argues that he had "no choice in signing the waiver" and that by proceeding directly to sign the waiver without pause "Agent Enk never [took] any substantive steps to ensure that Mr. Sillivan understood his right to remain silent and his right to an attorney." (Doc. 72 at 10).

Agent Enk did take a substantive step to ensure that Sillivan understood his rights. Agent Enk explicitly informed Sillivan of his right to remain silent and his right to an attorney when he read Sillivan his *Miranda* rights not even a minute before having him sign the waiver. (Sillivan Interview, 0:20-1:20). Agent Enk confirmed Sillivan's understanding of his rights not once, but twice, after Sillivan first replied unintelligibly. (*Id.*). Agent Enk also clearly and audibly stated the contents of the waiver, including that Sillivan was "willing to answer questions without a lawyer present." (*Id.*, at 1:50-1:56). Agent Enk adequately advised Sillivan of his rights and the consequences of signing the waiver. Police are not constitutionally required to supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights. *Moran v. Burbine*, 475 U.S. 412, 422 (1986). Sillivan may wish that Agent Enk phrased things differently or took more "substantive steps" to reiterate these rights, but the fact that he did not fails to qualify as coercive conduct.

Caselaw cited in Sillivan's own brief supports the determination that law enforcement's choice to phrase something as an instruction rather than a question does not, by itself, render a statement involuntary. In *United States v. Drake*, the Northern District of Illinois determined that a federal agent's statements that she "needed to take a statement" from the defendant and that "she had to get this done and that it was the best thing for him to do" were not the type of statements that would render a statement involuntary. *United States v. Drake*, 934 F. Supp. 953, 963 (N.D. Ill. 1996). Agent Enk's statement "I'll have you sign [the waiver] as well" does not constitutes coercive police action in light of the warnings and waiver read to Sillivan directly preceding that statement.

## II. Sillivan understood both the right being abandoned and the consequences of that decision.

A defendant must understand the rights being abandoned and the consequences of that decision in order for a waiver to be knowing and intelligent. *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007). The Court considers several factors for this inquiry, including: (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system. *Id.*; *United States v. Price*, 921 F.3d 777, 792 (9th Cir. 2019). These factors, when reviewed in the aggregate,

weigh heavily in favor of finding that Sillivan understood the nature of his rights and the consequences of signing the waiver.

Sillivan argues that he lacked the mental capacity to understand his rights and that he was particularly susceptible to police coercion because he "barely graduated" from high school; he has poor reading comprehension; and he has an "uncomplicated mind" predisposed to "doing what he is told." (Doc. 72 at 5–6). Sillivan adds that he sustained a head trauma in 2015. (Doc. 72 at 9).

The Court notes first that Sillivan provided no basis for believing that his head trauma compromised his ability to understand his rights. Sillivan only reports two symptoms associated with his head trauma—intense nightmares and sleep paralysis—neither of which reflect poorly upon his cognitive abilities. (Doc. 72 at 6). Sillivan's education level and allegedly poor reading comprehension prove similarly unpersuasive. Courts frequently have found people with much less education than Sillivan capable of understanding their *Miranda* rights. (Doc. 72 at 6). Likewise, Sillivan's alleged "uncomplicated mind" and "minimal reading skills" do not rise to the level of mental incapacity. *Id.*

In *United States v. Andaverde*, the district court found that the defendant, who had only a tenth-grade education, was "mentally 'slow' and [did] not always understand instructions." *United States v. Andaverde*, 64 F.3d 1305, 1311 n.5 (9th Cir. 1995). The Ninth Circuit affirmed the district court's finding that the

defendant understood his rights because his "slowness" and education level did not present a "severe handicap" and Andaverde verbally affirmed that he understood his rights. *Id.*; *see also United States v. Shi*, 525 F.3d 709, 728 (9th Cir. 2008) (holding defendant understood his rights despite having only a ninth grade education and having an Advice of Rights form presented in Mandarin, which was not his native dialect).

Sillivan's high school-level education and "difficulty with 'paperwork'" did not compromise his ability to understand his rights, as evidenced by his verbal and written confirmation of his understanding. (Doc. 72 at 5). Agent Enk would have been well-served by explaining Sillivan's rights to him individually and repeating them if need be, but Sillivan gave little indication that Agent Enk's failure to do so compromised his understanding. A defendant's demeanor during an interrogation provides an important clue as to whether the defendant's waiver was voluntary, knowing and intelligent. *See Shi*, 525 F.3d at 728 (determining that defendant's waiver was valid because defendant was "coherent and alert" and "cocky" when speaking with officers, despite having been held in a storage compartment on a ship for four days directly before the interrogation). Sillivan's demeanor throughout the interview was casual and respectful and Agent Enk found him to be cooperative, awake, and alert during the interview, despite Sillivan's early morning arrest. (Doc. 85 at 10, 13).

Most persuasively, Sillivan has an extensive criminal history that credits the theory that he understood both the nature of his rights and the consequences of waiving them. A suspect is still entitled to *Miranda* warnings regardless of their prior experience with the criminal justice system. *See United States v. Bland*, 908 F.2d 471, 474 and n.1 (9th Cir. 1990). The Court may consider a defendant's criminal history, however, when determining whether the defendant understood a waiver of rights. *United States v. Price*, 921 F.3d 777, 792 (9th Cir. 2019). This interview was far from being Sillivan's first interaction with law enforcement. Sillivan has two prior felony convictions, and he remains on parole with the State of Montana for his latter felony offense through March 2024. (Doc. 85 at 130). A defendant with Sillivan's history could be expected to be familiar with his Fifth Amendment right and the consequences of waiving it.

The totality of the circumstances, including Sillivan's extensive criminal history and his verbal acknowledgment of his rights, indicates that his written waiver of his rights was voluntary, knowing, and intelligent. The statement that followed is therefore admissible.

## ORDER

Accordingly, **IT IS ORDERED** that Sillivan's Motion to Suppress his Statement (Doc. 71) is **DENIED.**

Dated this 20th day of December, 2021.

_____
Brian Morris, Chief District Judge
United States District Court